UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAREN MACKALL,

    Plaintiff,

    v.

HEALTHSOURCE GLOBAL STAFFING, INC.,

    Defendant.

Case No. 16-cv-03810-WHO

**ORDER DENYING MOTION TO REMAND**

Re: Dkt. No. 15

## INTRODUCTION

The issue in this motion to remand a wage and hour putative class action is whether defendant HealthSource Global Staffing, Inc.'s ("HSGI") calculation of its potential damages as exceeding the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA") jurisdictional threshold of $5,000,000 is supported by a preponderance of the evidence. It is, and plaintiffs provide no alternative calculation or evidence to suggest a lower amount. The motion to remand is DENIED.

## BACKGROUND

### I. ALLEGATIONS IN THE COMPLAINT

Karen Mackall filed this class action in the Superior Court of the State of California, County of Alameda on behalf of a class of all non-exempt employees, currently employed or formerly employed by HSGI, a California corporation with its principal place of business in Fremont, California. First Amended Complaint ("FAC") ¶ 1; Declaration of Lance Fanger in Support of Removal (Dkt. No. 1-2) ¶ 3. HSGI hires registered nurses from all over the United States for temporary positions in hospitals during labor disputes. *Id.* Plaintiff and the putative class members she seeks to represent were employed by HSGI as non-exempt hourly Registered Nurses at various times in the County of Los Angeles during the last four years. FAC ¶ 7.

In the First Amended Complaint,[1] plaintiffs allege causes of action for: (i) failure to pay minimum wages under Cal. Lab. Code § 1194(a); (ii) failure to pay overtime compensation pursuant to Cal. Lab. Code § 1194; (iii) failure to provide meal periods under Cal. Lab. Code §§ 226.7 and 512; (iv) failure to provide rest periods under Cal. Lab. Code §§ 226.7 and 512; (v) failure to keep accurate payroll records under Cal. Lab. Code § 226; (vi) failure to pay wages of terminated or resigned employees under Cal. Labor Code §§ 203-203; (vii) failure to reimburse for necessary business expenditures under Cal. Lab. Code § 2802; (viii) unfair business practices under Business and Professions Code §§ 17200 *et seq.*; and (ix) violation of the California Private Attorneys General Act under Cal. Labor Code §§ 2698-2699.

## II.  REMOVAL TO FEDERAL COURT

HSGI removed the action to this court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2). Notice of Removal ("Not. of Removal") at 1. It asserts that this class action is removable under CAFA jurisdiction because:

> (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.

Not. of Removal ¶ 8.

HSGI alleges that minimal diversity exists because it is a citizen of California (as it is incorporated in and has its principal place of business in California), and the home mailing addresses for the putative class members establish that a large number of them are citizens of other states. Not. of Removal ¶¶ 12, 13; Fanger Removal Decl., ¶¶ 3, 6.  It asserts that the class consists of 1,242 putative class members. Fanger Removal Decl. ¶ 5.  HSGI also contends that the amount in controversy exceeds $5,000,000, based on its evidentiary showing that all but four of the 1,242 putative class members earned at least $45 per hour and earned a minimum of $630.00 per day

---

[1] Plaintiff amended her original complaint to include a defendant known as "Healthsource Global" or "HSG."  HSGI contends that HSG is not a separate legally-recognized entity, but simply a "shorthand abbreviation" of HGSI. Declaration of Lance Fanger in Opposition to Plaintiffs' Motion to Remand (Dkt. No. 18-1) ¶3.  Plaintiff also added a second named plaintiff, Shaliza Lacombe.  FAC ¶ 1.

during an average period of employment lasting five days. Not. of Removal ¶¶ 17-18. Its calculation in support of the Notice of Removal regarding the amount in controversy under specific causes of action follows.

### A. Overtime Cause of Action

With respect to overtime, HSGI initially assumed a 100% violation rate for overtime compensation, presuming that each putative class member worked on average one hour of combined excess time per workday as a result of staffing issues[2] and travel time to and from the worksite on defendant's bus. Not. of Removal ¶ 21. Based on the hourly rate of $45 per hour, HSGI calculated that alleged overtime would result in an amount of controversy of $818,100 ($90/hour unpaid double time premium x 5 average workdays x 1,818 separate employments). *Id*.

### B. Missed Meal Periods Cause of Action

HSGI assumed an average missed meal rate of 2.5 meal periods during each separate five day employment period. Not. of Removal ¶ 22. It calculated that missed meal premiums would result in $204,525 ($45/hour meal period premium x 2.5 missed meal periods x 1,818 separate employments). *Id.*

### C. Missed Rest Periods Cause of Action

HSGI assumed the same formula for missed rest periods as missed meal premiums. *See* Not. of Removal ¶ 23. HSGI calculated the missed rest premiums would result in $204,525 ($45/hour rest period premium x 2.5 missed rest periods x 1,818 separate employments). Not. of Removal ¶ 23.

### D. Waiting Time Penalties

Most significantly, HSGI alleged that the amount in controversy for waiting time penalties would be $26,932,500. Not. of Removal ¶ 25. Plaintiffs contend that defendant failed to pay wages upon separation of employment, making HSGI potentially liable for waiting time penalties equal to one workday's wages for each day the wages were not paid with a maximum penalty 30

---

[2] HSGI relies on plaintiffs' allegation that class members were not relieved on their shifts immediately and "*regularly* work[ed] over 12 hours per day without being paid double-time premium pay." Not. of Removal ¶ 21 (emphasis added).

1    days of wages. Not. of Removal ¶ 24; FAC ¶¶ 60-62. For the three-year limitations period for

2    waiting time penalties, defendant estimated 1,425 terminations, rather than the number of class

3    members,[3] due to the temporary nature of the class members' employment with HSGI. Not. of

4    Removal ¶ 24. HSGI reached its estimate by multiplying the daily wage ($630) by 30 (penalty

5    days) and then again by 1425 (the number of terminations).

6    The sum of these calculations is $28,159.650, well above the $5,000,000 statutory

7    requirement under CAFA. Not. of Removal ¶ 25. Plaintiffs seek to remand, challenging

8    defendant's showing on the amount in controversy.

## LEGAL STANDARD

The Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), gives federal courts original jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). A class action that meets CAFA standards may be removed to federal court. 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). In fact, Congress intended CAFA jurisdiction to be "interpreted expansively." *Ibarra*, 775 F.3d at 1197.

Under CAFA, a defendant removing a case must provide "a short and plain statement of the grounds for removal…." *Id.* A defendant's notice of removal needs only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and does not need evidentiary submissions. *Id.* (quoting *Dart Cherokee Basin Operating Company v. Owens*, 135 S. Ct. 547, 554 (2014)).

When testing the amount in controversy alleged, courts look first to the allegations of the complaint. *Id.* If the damages are understated or if the defendant argues the damages are

---

[3] Due to the temporary nature of the class members' employment, some class members had several periods of employment, leading to several terminations that would trigger the waiting time penalty. Not. of Removal ¶ 24.

understated, the defendant must show by a preponderance of evidence that the aggregate amount exceeds the $5,000,000 threshold. *Id.* The defendant in a jurisdictional dispute has the "burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Id.* at 1197.

When the plaintiff contests the defendant's amount-in-controversy allegations, both sides submit proof, and the court decides whether the jurisdictional threshold has been met. *Id.* (quoting *Dart*, 135 S. Ct. at 554). The parties may submit evidence beyond the complaint such as affidavits, declarations, or other "summary-judgment type evidence relevant to the amount in controversy…" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

"Mere speculation and conjecture, with unreasonable assumptions" is not sufficient to establish removal jurisdiction. *Ibarra*, 775 F.3d at 1197; *see also Fong v. Regis Corp.*, No. 13-cv-04497-RS, 2014 WL 26996, at *2 (N.D. Cal. Jan. 2, 2014). However, the burden to establish the amount in controversy by a preponderance of the evidence does not require the defendant to "research, state, and prove the plaintiff's claims for damages." *Donald v. Xanitos, Inc.*, No. 14-CV-05416-WHO, 2015 WL 1774870, at *4 (N.D. Cal. 2015) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008)). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

"When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaints." *Fong* 2014 WL 26996 at *2. "[CAFA] tells the district court to determine whether it has jurisdiction by adding up the value of the claim[s] of each person who falls within the definition of [the] proposed class and determin[ing] whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

## DISCUSSION

Plaintiffs contend that this case must be remanded because HSGI has not proved the amount in controversy exceeds CAFA's statutory requirement of $5,000,000. Mot. at 3. The

1   amount in controversy is the only dispute between the parties.  Plaintiffs do not dispute that
2   minimal diversity exists, that there are more than 100 class members, and that none of the CAFA
3   exceptions apply.
4         Plaintiffs do challenge the size of the class assumed by HSGI for purposes of its damages
5   calculation.  HSGI, using plaintiffs' statement that they seek to represent a class of persons "who
6   are employed or have been employed by Defendants in the State of California," includes within
7   the putative class all persons who worked in California during the relevant timeframe, regardless
8   of the citizenship of those persons.  *See* Not. of Removal ¶ 15; FAC ¶¶ 14, 22.  In their motion to
9   remand, plaintiffs accuse HSGI of characterizing the putative class as a nationwide class.  Mot. 2,
10  4.  However, the specific allegations of the FAC provide an adequate basis for HSGI to count as
11  putative class members each person who worked for it in California during the relevant time
12  period, as long as only those persons' work in California is counted.  Considering the class to
13  include persons who do not reside in California is consistent with plaintiffs' addition of Shaliza
14  Lacombe as a named plaintiff in the FAC.  FAC ¶ 1.  Defendant asserts and plaintiffs do not
15  contest that Lacombe is a Florida resident.  Fanger Remand Decl. ¶ 4.
16        As such, I find that defendant has presented adequate evidence that the putative class size
17  is at least 1,242 persons.

**I.  OVERTIME VIOLATIONS**

19        HSGI argues that its use of a 100% violation rate for failure to pay overtime (calculated as
20  one hour of overtime due per shift worked) is appropriate based on plaintiffs' allegations that
21  HSGI "consistently maintained and enforced… unlawful policies…," that plaintiffs "regularly
22  worked" over 8 or 12 hours a day and forty hours per week, and that defendant failed to pay
23  plaintiffs for that overtime.  Oppo. 7;  FAC ¶¶ 4, 35.  Plaintiffs respond that their allegations of
24  "consistent" and "regular" violations of the Labor Code are an insufficient basis to allow HSGI to
25  use a 100% violation rate.  Instead, plaintiffs argue that HSGI should have come forward with
26  "summary judgment" type evidence to show an evidentiary basis for using the 100% violation
27  rate.
28        In *Garza v. Brinderson Constructors, Inc.*, No. 15-CV-02661-RMW, 2016 WL 1298390,

at *3 (N.D. Cal. Apr. 4, 2016), the Hon. Ronald Whyte found the defendant could not rely on allegations that plaintiffs "regularly worked shifts" in excess of eight hours and defendant "maintained a policy or practice" of Labor Code violations to support their use of a 100% violation rate with respect to missed break claims. There was no "reasonable basis for a 100% violation rate" where the complaint did not allege a 100% violation rate and the defendant failed to show that its assumption was "reasonable." *Id*. "[A] 'pattern and practice' of doing something does not necessarily mean *always* doing something." *Id*. (quoting *Ibarra*, 775 F.3d at 1198-99); *but see Ibarra*, 775 F.3d at 1199 (an allegation that defendant "universally, on each and every shift" violated the Labor Code would be sufficient to support an assumed 100% violation rate).

Similarly, while the plaintiffs' allegations here can plausibly be read to allege that HSGI failed to pay overtime for putative class members "regularly" and "consistently," there is nothing in the complaint that suggests HSGI failed to do so *every time for every shift*. HSGI fails to submit any evidence to back up its calculation or otherwise explain why a 100% violation rate is a reasonable assumption, besides pointing to plaintiffs' allegations relating to consistent and regular unlawful practices. Oppo. at 7:15-20. HSGI cannot rely on its estimation of overtime liability as $818,100 to support its estimate as to the amount in controversy.

In its opposition to the Motion to Remand, HSGI presents a more conservative calculation – each class member may have missed one hour of overtime for each period of employment, resulting in $163,620 in damages for the overtime claim. Oppo. 8. In support of this more conservative calculation, defendant relies on cases where assumptions of one hour of missed overtime per pay period were found to be reasonable, based on plaintiffs' allegations of "regular" or "pattern and practice" violations. *See, e.g., Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019 MMM (MRWx), 2015 U.S. Dist. LEXIS 130521, at *32 (C.D. Cal. Sep. 28, 2015) (one hour of unpaid overtime per week "reasonable" based on plaintiffs' allegations that defendant "regularly" miscalculated overtime); *see also Garza v. Brinderson Constructors, Inc.*, No. 15-CV-02661-RMW, 2016 WL 1298390, at *3 (N.D. Cal. Apr. 4, 2016) (defendant's "assumption of one violation per week is reasonable based on the allegations of the SAC" that defendant regularly failed to provide rest breaks and had a "pattern and practice" of failing to provide those breaks).

7

Given the allegations by plaintiffs here, HSGI's assumption of one hour of overtime violation per term of employment is reasonable and the $163,620 estimate is appropriately considered towards the amount in controversy.

## II.     MEAL AND REST BREAK VIOLATIONS

HSGI based its calculations in the Notice of Removal for meal and rest break violations on the assumption that putative class members missed on average 2.5 meal periods and 2.5 rest periods for each term of employment, resulting in damages of $204,525 for the missed meal periods and $204,525 for the missed break periods. Not. of Removal ¶¶ 22-23; Oppo. 9.  It did so because plaintiffs alleged that its policies "consistently" violated the Labor Code, it "willfully refused" to permit putative class members from taking breaks, and plaintiffs were "often" forced to forego these breaks.  FAC ¶¶ 4, 40.

Plaintiffs mistakenly argued that HSGI again improperly calculated the amount in controversy resulting from missed meal and rest periods based on an unsupported 100% violation rate. Mot. 5. As with overtime calculations, the Ninth Circuit has rejected 100% violation rate assumptions where defendants' calculations assumed that a meal or rest violation occurred each workday. *See Ibarra*, F.3d at 1198-99 ("rejecting method of calculation assum[ing] that [defendant] denied each class member one meal break in *each* of their… 5-hour shifts and one rest break in *each* of their… 3.5-hour breaks") (emphasis added).  Similarly, Judge Whyte rejected a defendant's assumption that a "meal break violation occurred during every shift" where the "court [found] nothing in the complaint demonstrating that plaintiff alleges a 100% rate." *Garza*, 2016 WL 1298390, at *3.  But HSGI never alleged a 100% rate for each shift. *See* Not. of Removal ¶¶ 22, 23.  Instead, it assumed a 50% violation rate (2.5 missed meal and 2.5 missed rest breaks in each 5 day term of employment).  Oppo. 10.  In reply, plaintiffs point out that in *Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013), an unpublished decision, the court found that defendant's failure to "provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than 'one missed rest period per paycheck or one missed rest period per month'" meant there was no basis for its amount in controversy calculation.

8

1    HSGI relies on a Central District case[4] which allowed a 50% violation rate estimate based
2    on "policy or practice" allegations, but concedes that several Northern District cases have held that
3    assumptions of one missed meal and break per pay period are reasonable in light of policy and
4    practice allegations and allegations that defendants' "regularly" denied class member breaks.
5    Oppo. 9.  Accordingly, it offered a more conservative estimate based on one missed break and one
6    missed meal period per pay period. *Id*. at 10.  Under that more conservative estimate, it calculates
7    $81,810 for the missed meal breaks and $81,810 for the missed rest breaks as part of the amount
8    in controversy.  That calculation is reasonable and supported by the evidence. *See, e.g., Garza v.
9    Brinderson Constructors, Inc.*, No. 15-CV-02661-RMW, 2016 WL 1298390, at *3 (N.D. Cal.
10   Apr. 4, 2016); *Tripp v. Crossmark, Inc.*, No. 13-cv-03480-WHO, 2013 U.S. Dist. LEXIS 144154,
11   at *5 n.2 (N.D. Cal. Oct. 3, 2013).

### III.  WAITING TIME PENALTIES

The main issue is whether HSGI's calculation of waiting time penalties as placing $26,932,500 at issue is sufficiently supported.  Plaintiffs allege that HSGI is liable for waiting time penalties under Cal. Labor Code §§ 201-203 for its failure to pay all wages due including overtime compensation and meal and rest premiums. FAC ¶¶ 60-62. HSGI relies on plaintiffs' allegations that it "failed to pay" all wages due and owing on termination, and defendants "willfully failed and refused, and continue to fail and refuse" to pay wages upon termination. FAC ¶¶ 8, 20.  It then assumes that "each putative class member would be entitled equal to one workday's wages for up to a maximum 30 days of waiting time penalties if Plaintiffs were to prevail." Oppo.  11:19-21. With approximately 1,425 separate terminations, the HSGI estimates an amount in controversy equal to $26,932,500. Not. of Removal ¶ 24.

Plaintiffs point out that HSGI again invokes a 100% violation rate in calculating the waiting time penalties, which as discussed above is routinely rejected in absence of language in the complaint that defendants "uniformly" or "always" violated the Labor Code. *See also Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) ("Archstone assumes that each

---

[4] *Oda v. Gucci Am., Inc.*, No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *11 (C.D. Cal. Jan. 7, 2015).

9

employee would be entitled to the maximum statutory penalty, but provides no evidence supporting that assertion.).[5]  However, as discussed above, I have concluded that defendant adequately supports violations of the Labor Code for at least one hour of unpaid overtime per five day work period, as well as at least one unpaid rest and one unpaid meal break.  These reasonably assumed violations would support waiting time penalties in the amount defendant calculates.

In similar circumstances, Judge Whyte concluded that allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations) were sufficient to support estimations of waiting time penalties at a 100% rate.  *Garza v. Brinderson Constructors, Inc.*, No. 15-CV-02661-RMW, 2016 WL 1298390, at *4 (N.D. Cal. Apr. 4, 2016); *see also Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014) (CAFA amount in controversy satisfied in part by waiting time penalties; "Assuming a 100% violation rate is thus reasonably grounded in the complaint. . . . Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum.").

Plaintiffs failed to offer any alternative calculation in a lower amount for waiting time penalties.  While the burden of proof rests with the defendant, "if [the] defendant's asserted amount in controversy is challenged, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at *4 (quoting *Ibarra*, 775 F.3d at 1197).  Because premiums for missed meal periods and rest periods are wages, the employer's failure to pay these wages triggers penalties under Cal. Lab. Code § 203.  *See, e.g.*, *Mejia v. DHL Express (USA), Inc.*, No. CV 15–890–GHK, 2015 WL 2452755, at *6 (C.D. Cal. May 21, 2015) (finding that unlawful wage holding would result in waiting time penalties); *see also Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1114 (Cal. 2007) (stating the "amount of payment" as "linked to an employee's rate of compensation, rather than a prescribed fixed amount, further supports the position that § 226.7

---

[5] Defendant notes that *Garibay* does not hold precedential weight. *Mejia v. DHL Express (USA), Inc.*, No. CV 15–890–GHK, 2015 WL 2452755, at *4; *see also* 9th Cir. R. 36–3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion").

payments are… wages"). Plaintiffs failed to respond to HSGI's calculation of $26,932,500 with any evidence or arguments that support an amount in controversy lower than the statutory requirement of $5,000,000.

Therefore, while HSGI's calculations for overtime violations and missed meal and rest breaks are not sufficient in themselves to establish the statutory requirement of $5,000,000, the potential amount in controversy resulting from waiting time penalties well exceeds the CAFA requirement. Even reducing its assumed violation rate of 100% to account for the possibility that the maximum 30 day statutory fine would not be assessed (which is questionable given that plaintiffs also allege that defendant still has not paid all wages due), the resulting waiting time penalties would still support an amount in controversy that far exceeds the CAFA statutory requirement of $5,000,000. I find that HSGI's calculation of waiting time penalties, based on reasonable assumptions from the evidence HSGI submits and the allegations in plaintiffs' FAC, satisfies the amount in controversy requirement.

## CONCLUSION

HSGI has shown by a preponderance of the evidence that the amount in controversy of $5,000,000 is satisfied. I have subject matter jurisdiction under CAFA. Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction is DENIED.

**IT IS SO ORDERED**.

Dated: September 2, 2016



WILLIAM H. ORRICK
United States District Judge